UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PETER W. GABAL and JAMES M. GABAL, )<br>       )<br>Plaintiffs, )<br>       )<br>vs.    )<br>       )<br>CAPITAL MANAGEMENT SERVICES, LP; )<br>CREDIT CONTROL LLC, )<br>       )<br>Defendants. )<br>_____) | Case No.: 3:18-cv-00876-JAM<br><br><br><br><br>**PLAINTIFFS' MEMORANDUM IN<br>SUPPORT OF ATTORNEY'S FEE'S<br>AND COSTS** |

I.   **Introduction**

Plaintiffs, Peter and James Gabal, submit this brief in support of their application for attorney's fees and costs for resolving this litigation successfully. After six and a half months of litigation Defendant yielded to the claims of both Plaintiffs and supplied both Plaintiffs with offers of judgment providing the maximum amount of statutory damages provided for under the law. The parties were unable to resolve the mandatory attorney's fees and costs to be awarded to Plaintiff pursuant to 15 USC §1692k.

II.   **Background and Summary of Case Proceeding**

Plaintiffs commenced this lawsuit on May 24, 2018 after receiving a collection attempt from Defendant to collect a consumer debt. The problem with Defendant's collection attempt was that Plaintiffs believed that the debt had already been paid off given that they had come to a settlement agreement with the previous debt collector, which Plaintiffs had honored.[1] Accordingly, Plaintiffs alleged that Defendant violated 15 U.S.C. §§1692e, e(2), and e(10). Ultimately,

---

[1] It now appears that the previous debt collector may have deceived Plaintiffs when offering the settlement.

Defendant yielded to the claims of both Plaintiffs and issued each Plaintiff a Rule 68 Offer of Judgment for $1,001, which were accepted on December 5, 2018 and filed with the Court.

### III. The Attorney's Fees and Costs Sought are Fair and Reasonable

This is not a case where the attorney's fees sought are bloated and unreasonable. After six months of litigation, by the time Plaintiffs accepted their Offers of Judgments, Plaintiff's attorney's fees were $7,026. This small of a fee request for the prosecution of claims for two plaintiffs over a six month period is per se reasonable. Nonetheless, Defendant seeks to spend likely an equal amount of expense litigating whether the initial $7,026 is reasonable. As the prevailing party, Plaintiffs are entitled to attorney's fees pursuant to 15 USC §1692k.

### a. In awarding fees and costs, the Court should respectfully bear in mind Congress' goals in mandating fee-shifting under the FDCPA

Congress enacted the FDCPA more than three decades ago because of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices" that harm the marketplace economy by "contribut[ing] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasion of individual privacy." 15 U.S.C. § 1692(a). Congress found that existing laws and procedures were "inadequate to protect consumers" and "[m]eans other than misrepresentation or other abusive debt collection techniques are available for the effective collection of debts." 15 U.S.C. § 1692(b) and (c). Congress encouraged consumers to bring FDCPA actions before Federal Article III judges by eliminating any "amount in controversy" requirement. 15 U.S.C. § 1692k(d). Congress also fostered enforcement of the FDCPA by enacting statutory damages and mandating that debt collectors pay "the costs of the action, together with a reasonable attorney's fees as determined by the court." 15 U.S.C. § 1692k(a)(3).

### b. FDCPA fee standards

An award of attorney's fees is mandatory in FDCPA cases. *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164 (7th Cir. 1997); *Graziano v. Harrison*, 950 F.2d 107, 113-14 (3d Cir. 1991). Civil suits will deter abusive practices only if it is economically feasible for consumers, and their counselors to bring them. "Unless consumers can recover attorney's fees, it may not be possible for them to pursue small claims." *Venes v. Professional Service Bureau, Inc.*, 353 N.W.2d 671 (Minn. App. 1984). "Unscrupulous collection agencies have little to fear from such suits if consumers must pay thousands of dollars in attorney fees to protect hundreds." *Id.* Congress recognized this problem and specifically provided for the award of attorney fees to successful plaintiffs.

    c. <u>The proposed fee is reasonable</u>

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 117-18 (2d Cir. 2007), the Second Circuit clarified the proper analysis for a district court to undertake in exercising an award of attorney's fees includes an analysis of the *Johnson* factors. The *Johnson* factors are:

    (1) the time and labor required;
    (2) the novelty and difficulty of the questions;
    (3) the skill requisite to perform the legal services properly;
    (4) the preclusion of other employment by the attorney due to acceptance of the case;
    (5) the customary fee in the community;
    (6) whether the fee is fixed or contingent;
    (7) time limitations imposed by the client or the circumstances;
    (8) the amount of time involved and the results obtained;
    (9) the experience, reputation, and ability of the attorneys;
    (10) the ―undesirability‖ of the case;

(11) the nature and length of the professional relationship with the client;

and

(12) awards in similar cases.

*Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

Once a figure for attorney's fees is calculated using the *Johnson* factors, that amount becomes the ―lodestar which can then be adjusted upwards or downwards, again using the *Johnson* factors. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). If the lodestar figure is properly calculated, adjustment will be unnecessary in most cases. *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986).

In general, there is a strong presumption that the lodestar figure (reasonable hours multiplied by a reasonable rate) represents a reasonable fee. *Blanchard v. Bergeron*, 489 U.S. 87, 95 (1989). Currently prevailing marketplace rates establish the lodestar amount. *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989); *DiFilippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985). A district court may not reduce the established market rate by some factor that it believes accounts for differences between large firms and small firms; lawyers of common expertise and experience in the same market are entitled to the same rate. *Bankston v. State of Illinois*, 60 F.3d 1249, 1255-56 (7th Cir. 1995); *Bailey v. District of Columbia*, 839 F. Supp. 888, 891 (D.D.C. 1993).

### d. The burden of proof is on the opponent to rebut the *Johnson* factors

#### i. the time and labor required

The instant case has lasted approximately six (6) months. This time was spent negotiating with Defendant's counsel in order to obtain adequate relief for both Plaintiffs and discovering whether Defendant CMS had any liability in this action whatsoever. From the beginning, this has

been a more peculiar case than the garden variety FDCPA actions. Most FDCPA violations involve one plaintiff and one defendant, and either a clear violation, or a violation where the parties disagree on the merits. Not so in this case. Here, from the beginning it has been unclear whether Plaintiff James Gabal or Plaintiff Peter Gabal had a cause of action, and further, whether Peter or James's cause of action was against CMS, the other Defendant, or both. To figure this out as quickly as possible, Plaintiff spent additional time carefully crafting discovery requests of Defendant to come to the correct conclusion as soon as possible.

While engaging in discovery, the parties also disputed the merits of the claims. Between discussion of the merits, discovery, and settlement discussions, Daniel Zemel spent approximately 13 hours on the case, and Nicholas Linker spent approximately 6 hours on the case.

### ii. the novelty and difficulty of the questions

The question presented in this case is admittedly not particularly novel, like most FDCPA cases which are relatively straightforward. The case involves an allegation that Defendant sought to collect on a debt which Plaintiffs no longer owed. However, as addressed above, the circumstances of this case was more difficult than most straight forward FDCPA case because Plaintiffs' counsel needed to determine "whose on first." From the beginning, it was not clear whether Peter or James had a claim nor was it clear whether said claim was against Defendant CMS or Defendant Credit Control.

### iii. the skill required to perform these legal services properly

Successful litigation of a consumer protection case requires skill and familiarity with the issues involved. Most attorneys do not recognize the legal issues involved in such cases, and requests for representation are generally turned away by members of the Bar—explaining why there are relatively few FDCPA practitioners in relation to other areas of law. While much has

been discussed concerning the need to determine who had a claim (Peter or James) and against whom (CMS or Credit Control), there also remains a merits inquiry, specifically concerning the right of CMS to rely on the bona fide error defense, through proving that it reasonably relied on its client and believed the debt had remained due and owing. It takes a skilled FDCPA practitioner to develop holes in the bona fide error defense, and convince a defendant that it should settle a consumer's claim rather than attempt to litigate that defense. It is the belief of Plaintiffs that only a skilled FDCPA practitioner could come out with a judgment for the full $1,000 in statutory damages for *both* clients on a claim with many "whose on first" questions needing determination.

        iv.   the preclusion of other employment

Zemel Law LLC has a large case load; the time spent on this case was not, and could not be, spent at the same time on other cases. There are substantial opportunity costs in preparing the necessary documentation and briefing to represent a plaintiff in a contingency or fee-shifting case in federal court. The amount of time expended on this claim would have been spent on other matters, had this case not been filed or litigated to this extent. It is appropriate to consider that whenever an attorney takes a case, he does so to the exclusion of accepting other work. Plaintiffs' counsel expended the requisite amount of time reviewing the case and litigating it to its conclusion, to the exclusion of helping other consumers. Plaintiffs' counselors of record have a number of potential clients and cases to engage each day. Each of these consumers seek immediate intervention on their cases, and do not want to wait for their lawyer to finish another consumer's case. Thus, due to the amount of time working on this litigation, Plaintiff's counsel were unable to focus on other consumers.

        e.   the customary fee for like work in the community

There are few decisions concerning reasonable fees in FDCPA cases in Connecticut District Courts. This fee request is within the range of similar work and amounts recognized by other local Federal Courts. The Eastern District of New York have found reasonable hourly rates to be approximately $300–$450 for partners, $200–$325 for senior associates, and $100–$200 for junior associates." *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014) (citations omitted); *see also D'Annunzio v. Ayken, Inc.*, No. 11-CV-3303 (WFK)(WDW), 2015 WL 5308094, at *4 (E.D.N.Y. Sept. 10, 2015) ("Courts in the Eastern District of New York award hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals."). "Courts in the Eastern District of New York have regularly awarded experienced attorneys hourly rates ranging from $250 to $350." *Garland v. Cohen & Krassner*, 2011 U.S. Dist. LEXIS 136622 (E.D.N.Y. Nov. 29, 2011).

Here, the attorneys of record are for the most part, billing substantially less than the above published rates. Daniel Zemel bills at a rate of $300 per hour. Zemel Aff. ¶ 3. Mr. Zemel has been admitted since 2014 and has consecutively worked in consumer law. Zemel Aff. ¶ 4. Mr. Zemel is the owner of Zemel Law LLC, a firm with three associate attorney's focused on consumer protection. Zemel Aff. ¶ 1.  Since 2014, Mr. Zemel has handled over three hundred and fifty consumer law cases, has been certified as lead Class Counsel on five FDCPA class actions, and successfully litigated FDCPA work before the Third Circuit. Zemel Aff. ¶¶ 9-11. During Mr. Zemel's last fee petition, Mr. Zemel was awarded a rate of $300 per hour for his FDCPA work. Carmen v. R.A. Rogers, Inc., 5:16-cv-00971-FB-HJB, ECF 71, (W.D. Tex. Apr. 25, 2018). Mr. Zemel's rate is between the rates awarded for partners ($300-$425) and senior associates ($200-325). S*ee also Manopla v. Bryant, Hodge & Associates, LLC,* 2014 WL 793555 (D.N.J. Feb. 26,

2014) (awarding attorney with 2 years' experience a rate of $300); *Diena v. MCS Claim Services, Inc.*, 3:13-cv-05902-JAP-TJB (D.N.J. October 2, 2014) (same).

Nicholas Linker's rate of $240 per hour is also reasonable. Mr. Linker has been licensed since 2015. Linker Aff. ¶ 4 Mr. Linker began his career as a clerk for the Honorable John J. Matheussen in the New Jersey Superior Court. Linker Aff. ¶ 6. Mr. Linker than spent a year handling educational law matters before joining Zemel Law in 2017. Linker Aff. ¶ 7. Since joining Zemel Law, Mr. Linker has handled approximately sixty (60) FDCPA actions and has been certified as class counsel in an FDCPA case. Linker Aff. ¶¶ 9-10. Mr. Linker's rate is commensurate with his experience. *Feier v. Cash Flow Generators*, No. 1:14-cv-10221 (SDNY April 13, 2015) (awarding attorney with 2 years' experience rate of $250); *Frederic v. Commonwealth Fin. Sys.*, 2016 U.S. Dist. LEXIS 47438, at *8 (E.D.N.Y. Apr. 7, 2016) (awarding attorney with 1.5 years' experience a rate of $250).

### f. Whether the fee is fixed or contingent

An award of attorney fees in a contingency fee matter should compensate counsel for the risk of receiving no compensation. In consumer protection cases, the fee is very often contingent – not on the amount of damages, but on an award by the court or agreement by the opponent. In a private attorney general case, Congress encourages counsel to bring suit, recognizing that counsel cannot charge the client an hourly fee, because the fee may be out of proportion to the recovery. If contingent, the fee award should compensate counsel for the risk of receiving no compensation. *Blum v. Stenson*, 465 U.S. 886, 903 (1984). "Lawyers operating in the marketplace can be expected to charge a higher hourly rate when their compensation is contingent on success than when they will be promptly paid, win or lose." *Id.*

Here, Plaintiffs' counsel was willing to provide services to the Gabals regardless of whether they won or lost their case, and regardless of whether only one of the two was successful while still litigating for the second plaintiff.

g. Time limitations imposed by the client or the circumstances

The time limits in this case were only those imposed by the applicable statutes of limitations, the Rules, and those set by the Court. Plaintiffs are required to submit a *Johnson* factors review, as mandated, by the Second Circuit, in order to present their statutory costs and attorney's fees award, but this factor is of no consequence.

h. The amount of time involved and the results obtained

During the course of six months, Daniel Zemel spent approximately 13 hours on the case, and Nicholas Linker spent approximately 6 hours on the case. Counsel spent additional time focusing on this necessary fee application for another 5 hours by Mr. Zemel and 0.5 hours by Mr. Linker. As a result of Counsel's time and efforts, Mr. Zemel obtained the maximum statutory relief not only for one of his clients, but for both of them, despite the "whose on first" posture of the case. These results are stellar.

i. The experience, reputation and ability of the attorney

Both attorneys handling the matter are well experienced within the field of FDCPA litigation. Mr. Zemel has handled of many FDCPA matters of varying nature and Mr. Linker has as well as more fully set forth in the attached affidavits of Mr. Zemel and Mr. Linker.

j. The undesirability of the case.

There are very few attorneys who have the knowledge, ability, and willingness to represent consumers in this area of law. Most attorneys are unwilling to take the risk of large investments of time for what appear to be minor, small dollar cases. Further, Defense counsel is a highly experienced FDCPA litigator. Throughout this litigation Defense counsel has made clear that this case is a loser, making its undesirability quite clear. Further, because it was unclear which plaintiff had a claim and against which defendant, taking on this case for Zemel Law risked that it would spend time and resources against a defendant or on behalf of a plaintiff that would ultimately not be successful and compensable. These conditions added even more to the undesirability of the case.

      k.   <u>The nature and length of the professional relationship with the client</u>

Plaintiff retained Zemel Law specifically to pursue the specialized consumer protection laws at issue. Zemel Law's employment was sought because of its legal abilities and reputations in this area of the law, by a Connecticut consumer despite Zemel Law's primary office being located in New Jersey. Such representation is limited to consumer-protection claims, which are episodic, rather than ongoing, matters. Unlike their big-firm brethren, consumer attorneys cannot rely on hefty retainers from paying institutional clients or insurance companies over many years. Further, Plaintiffs were heavily involved in this litigation, believing their rights to have been viciously violated by deceit and out of pocket loss. As such, Plaintiffs and counsel were in constant contact regarding the details and updates throughout the case.

      l.   <u>Awards in similar cases</u>

There are few reported cases in Connecticut discussing attorney fee awards in FDCPA class actions. Courts recognize however, that fee awards are to mimic the marketplace: [p]aying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent

with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law. *Tolentino v. Friedman*, 46 F.3d 645, 653 (7th Cir. 1995); *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164 (7th Cir. 1997). As is more fully enunciated in subparagraph e above, Plaintiff's motion for attorney's fees is commensurate with awards in similar cases.

## IV. Fees Incurred in Fee applications are also compensable

Despite attempts to resolve the case by agreement, the parties could not agree on the attorney's fees and costs expended on this matter. As a result, counsel for Plaintiffs have had to move for fees to be decided by the Court, as set forth by statute 15 U.C.S. § 1692k(a)(3). When dealing with a fee shifting statute such as the FDCPA, "fees on fees" is allowed. *Rosado v. City of New York*, 2012 U.S. Dist. LEXIS 35249, at *23-24 (S.D.N.Y. Mar. 15, 2012) ("[A]s a matter of equity, plaintiff should be awarded some amount for the time his counsel spent in preparing the instant fee application. By not settling the attorneys' fees issue, the City was put on notice that time spent by counsel in seeking fees would become a component of 'reasonable attorney's fees.'").

Mr. Zemel has spent 5 hours on the instant motion and attached documents, and Mr. Linker has spent 0.5 hours.

## V. Costs

Under the FDCPA, the prevailing party is also entitled to reasonable costs. Like the attorney's fees request herein, the costs sought are inherently reasonable. Plaintiffs seek $400 for filing this case in federal court. (Plaintiffs request that the court take judicial notice concerning this filing fee). Plaintiffs also seek $55 for service of process, a receipt for which is attached hereto as an Exhibit.

VI.     **Conclusion**

Plaintiffs fee request of $7026.00 is not unreasonable. The case was litigated on behalf of two clients for six months. During this time, both discovery and settlement negotiations were conducted in an efficient manner yielding positive results. The hourly rates requested are also not bloated but reasonable in light of counsel's experience and stellar results.

Dated: January 7, 2019.

                                                        Respectfully Submitted,

                                                        <u>s/Daniel Zemel</u>
                                                        Daniel Zemel, Esq.
                                                        Zemel Law LLC
                                                        1373 Broad Street, Suite 203-C
                                                        Clifton, New Jersey 07013
                                                        T: (862) 227-3106
                                                        dz@zemellawllc.com
                                                        Attorneys for Plaintiffs